## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

Abu Samura                                                            :
7333 Cedar Avenue
Jessup, MD 20794                                                      :

      Plaintiff,                                              :

v.                                                                    :          Case No. _____

SavaSeniorCare Administrative Services, LLC      :
One Ravinia Drive
Suite 1500                                                           :
Atlanta, GA 30346
                                        :          JURY TRIAL DEMANDED
and
                                        :

SSC Catonsville Operating Company, LLC           :
One Ravinia Drive
Suite 1400                                                           :
Atlanta, GA 30346                                                    :
          Serve:  The Corporation Trust, Incorp. (RA)
                 2405 York Road, Suite 201                      :
                 Timonium, MD 21093-2264
                                       :
      Defendants.
_____:

## **COMPLAINT**

      Plaintiff, Abu Samura ("Plaintiff" or "Samura"), by and through his undersigned counsel,

brings this action to redress deprivation and interference of rights secured by the Americans With

Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* (the "ADA"), Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. §2000 *et seq*. and the Family and  Medical Leave

Act, 28 U.S.C. § 2601 *et seq.* (the "FMLA").

### **JURISDICTION AND VENUE**

1.   This Court has jurisdiction over Plaintiff's claims by virtue of, among other provisions

-2-

of law, 28 U.S.C. §§ 1331 and 42 U.S.C. §§ 2000e and 12101, *et seq.* for claims arising under the laws of the United States.

2. Venue is proper in this Court because the unlawful employment practices occurred in this district; Plaintiff worked in this district; and the defendants conducted business in this district.

3. On or about May 8, 2020 Abu Samura filed claims under Title VII and the ADA with the United States Equal Employment Opportunity Commission ("EEOC") arising out of his unlawful termination.   The EEOC issued a Notice of Right to Sue on May 15, 2020.  This Complaint is being filed within 90 days of Samura's receipt of the Notice of Right to Sue.

## PARTIES

4. Plaintiff, Abu Samura ("Plaintiff" or "Samura") is an adult male residing at the captioned address.  At all relevant times, Samura was a registered nurse working full-time at the Summit Park Health and Rehabilitation Center in Catonsville, Maryland and an employee within the meaning of the ADA, Title VII, the FMLA, and any other relevant civil rights laws.

5. Defendant, SavaSeniorCare Administrative Services, LLC ("Defendant" or "Sava") is a private entity providing skilled nursing care to facilities across the United States, including Maryland, and its corporate office is located at the captioned address.  At all relevant times, Sava was Plaintiff's co-employer within the meaning of the ADA, Title VII, the FMLA, and any other relevant civil rights laws.  At all relevant times, Sava employed more than 500 employees.

6. Defendant, SSC Catonsville Operating Company, LLC ("Defendant" or "SSC

-3-

Catonsville") is an entity believed to have been organized by Sava to own, manage, and/or operate Summit Park Health and Rehabilitation Center in Catonsville, Maryland, and its corporate office is located at the captioned address.  At all relevant times, SSC Catonsville was Plaintiff's co-employer within the meaning of the ADA, Title VII, the FMLA, and any other relevant civil rights laws.  At all relevant times, SSC Catonsville and its parent company, Sava, employed more than 500 employees.

## FACTS

7.   Samura, a registered nurse, began his employment with Defendants in 2008 as a night supervisor of nurses.  He worked successfully in that capacity for five (5) years then he resigned his employment in 2013 to return to living temporarily in Africa.

8.   In 2015 Samura returned to the United States and sought re-employment with defendants.  Samura was initially re-hired as an on-call nurse, then after six (6) months he was promoted to a shift supervisor at the Glen Burnie facility where he performed his duties successfully for the next two years.

9.   When a new director of nursing arrived at the Glen Burnie facility, she was afforded the opportunity to hire mid-level managers of her choosing, including the supervisory position Samura held.

10.   Therefore, around June 2017 Defendants transferred Samura to the Summit Park Health and Rehabilitation Center in Catonsville, Maryland to work the evening shift as a floor nurse because there was no supervisor position available there.  However, Defendants kept Samura's

-4-

pay at the supervisor level because it was expected that he would fulfill supervisory

responsibilities when the regular nursing supervisor was not at work, which he did.

11.  In or around April 2019 Samura developed back problems, which caused him to

experience excruciating pain.  Samura sought medical treatment and was prescribed medication

to help alleviate the pain and inflammation.  Samura took his medication as prescribed while he

continued under doctor's care for his condition.

12.  Samura continued to report for work and performed his work despite suffering pain.

Defendants' director of nursing, Ms. Morgan ("Morgan"), and other managers were aware of

Samura's medical condition and saw him sometimes in distress as he worked.

13.  By June 2019, the pain in Samura's back had intensified to the point his gait

noticeably changed because he started to walk slowly and to bend over as he walked.

14.  Several days during June 2019 Samura requested sick leave because his medical

condition made it too painful for him to work, but Morgan and other managers pressured him to

come to work on threat of being removed from the schedule.   Fearing termination, Samura went

to work on each day he sought sick leave and worked under pain and distress.

15.  In or around the first week of July 2019 Samura met with Tiffany, a representative in

Defendants' Human Resources Department ("HR"), and discussed his medical condition,

his need for leave to attend to his medical condition, as well as Morgan and other managers

denying his request for sick leave and threatening that if he did not come to work he would be

removed from the schedule.

16.  Tiffany acknowledged to Plaintiff that he was eligible for FMLA leave, and she provided

him with a FMLA package with a form to be completed by his doctor.  Samura submitted the

form to his doctor the same day, and was advised that the form would be processed through the

medical records department.

17.  Samura worked in pain on July 8 and 10, 2019 because he feared that if he requested

sick leave Morgan would remove him from the nursing schedule permanently.

18.  Around this time, Morgan told one of the nurses that she was going to fire Samura.

19.  On July 11th Samura started the day in excruciating pain, forcing him to call his

employer to get time off to go to his doctor.  Defendant's manager said there was not enough

nursing staff coverage, and that if he did not come to work he would be taken off the schedule.

20.  Desperately wanting to keep his job, Samura ambled into work on July 11, 2019 in pain.

The pain considerably slowed Samura's movement that day, so that by the time he reached his

work site and clocked in it was later than his scheduled start time.  By that time Samura's back

pain had intensified to the point where Tiffany from HR brought him a chair to sit and offered to

call 9-1-1 to take him to the hospital based on his obvious distress.  Meanwhile, Morgan sent her

deputy to the first floor to check on what was happening with Samura.

21.  After a short rest Samura felt a little relief, advised Tiffany that his car was in the

parking lot and he would drive to his doctor rather than being taken by ambulance to the hospital.

22.  Samura left his job site, drove to his doctor in pain on July 11, 2019 and received

treatment. Samura returned to his doctor for a follow-up medical procedure on July 12th.

23.  On July 12, 2019 Samura's doctor prepared a written Verification of Treatment,

-6-

confirming Samura's inability to work from July 8 through July 15th due to his medical

condition, and noted that Samura's FMLA paperwork was pending.  Samura's wife delivered the

Verification of Treatment to Morgan on July 12th.

24.  On July 15, 2017 Samura's medically authorized leave ended. On July 16, 2019,

Samura's scheduled day off, Defendants' scheduler called him and confirmed that he would be

returning to work on July 17th.

25.  However, on the morning of July 17th Tiffany from HR called Samura and advised him

that he should not report to work that day because he was taken off the schedule allegedly due to

overstaffing, but that he should report to work the next day, July 18th.

26.  On July 18th when Samura returned to work, he was advised to go immediately to the

HR Department.  Samura met with Tiffany and Katie, a HR representative from the corporate

offices in Atlanta.

27.  Katie presented Samura with an Attendance Disciplinary Action Record ("Attendance

Record"), prepared by Tiffany, and advised him that he was terminated, effective immediately,

due to excessive tardiness.

28.  The Attendance Record itemized fabricated dates of tardiness dating back to July 24,

2018, almost a year preceding Samura's termination.

29.  The Attendance Record terminating Samura's employment was not in accordance with

Defendants' progressive disciplinary policies.  According to Defendants' policies, three instances

of tardiness are considered one occurrence.  Two occurrences trigger the first level discipline,

which is an initial written warning.  Four occurrences result in a second written warning; six occurrences result in a final written warning; and seven occurrences result in termination.

30.  Under defendants' policies and the fabricated Attendance Record presented to Samura, he should have been terminated as of May 18, 2019, the alleged qualifying date for seven occurrences.

31.  However, prior to July 18, 2019 Samura never received an initial written warning, a second written warning, or a final written warning for any alleged tardiness.

32.  The first time Samura learned that he was being disciplined for alleged tardiness was on July 18, 2019 when he was terminated.

33.  As of Samura's termination on July 18, 2019 he was waiting for his doctor to complete the medical certification for his FMLA leave.

34.  Female employees who had a record of tardiness, even worse than alleged against Samura, were not terminated or otherwise disciplined.

35. At all times prior to Samura's termination, he was able to satisfy the essential functions of his job as a nurse with Defendants and performed his job at or above expectation.  Indeed, Samura more than adequately performed the essential functions of his position, received very favorable feedback about his work, filled-in on his days off when there was staff shortages, and many times during his tenure performed supervisory responsibilities when the regular nursing supervisor was absent from work.

36.  Defendants are liable for the actions of their managers, supervisors, and other employees involved in the employment action(s) at issue under the doctrine of *respondeat superior.*

-8-

37.  Defendants' conduct was outrageous, malicious, wanton, reckless, and/or in willful disregard of Samura's rights under the law.

### Count I
### Violation of Americans With Disabilities Act
### (Failure to Accommodate)

38.  Plaintiff incorporates the allegations of paragraphs 1-37 of the Complaint as if fully stated herein.

39.  Plaintiff had a qualifying disorder within the meaning of the ADA, as amended, and Defendants' managers, including Morgan and Tiffany, had notice of that disability – persistent back pains that required continuing treatment by a healthcare provider.

40.  Plaintiff's medical condition substantially limited several of his major life activities such as working, walking, bending, lifting, sleeping, and major bodily functions ss defined by the ADA and the 2008 amendments thereto.  Specifically, beginning in or around June 2019 Plaintiff's medical condition caused him to walk at a slower pace with bent back and slouched shoulders to brace the pain; he could not bend to pick up objects or carry packages over certain weight limits; he needed assistance in caring for his personal hygiene at times; his sleep was disturbed by frequent interruptions due to pain approximately 3-4 nights per week; he awoke several days in debilitating pain that affected his ability to work and/or concentrate on his job duties; and he could no longer stand for sustained periods of time.

41.  With (or without) reasonable accommodations Plaintiff could perform the essential functions of his position as a nurse.

42. Plaintiff requested reasonable accommodations to allow him to continue to perform the

essential functions of his position as a nurse – which included, but were not limited to, intermittent sick leave to attend medical appointments to treat his condition and recuperate from flare-ups of his medical condition.

43.  Defendants' managers and HR personnel, including Morgan and Tiffany, knew about Plaintiff's disability from having communicated with him about his requests for sick leave and/or FMLA leave, observed his changed gait from the pain as well as his slowed movement and overall functioning when he worked in pain.

44.  Defendants' managers, including Morgan, Tiffany and/or Katie, refused to discuss reasonable accommodations with Plaintiff, denied his requests for sick leave, threatened to remove him from the work schedule if he did not report to work in pain, removed Plaintiff from the work schedule on July 17, 2019 even though he was available and medically released to work, and ultimately terminated his employment for fabricated reasons on July 18, 2019 rather than permit him to resume his regular duties after he took medically necessary sick leave.

45.  As a direct and proximate result of said intentional acts in failing to accommodate Plaintiff's disability, he has suffered and continues to suffer loss of employment, loss of loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer emotional distress, humiliation, embarrassment, inconvenience and damage to his reputation.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for equitable relief and damages in an ascertainable sum as follows:

(a)  An injunction requiring Defendants to cease their illegal personnel practices;

-10-

(b) Reinstatement to the position Plaintiff held prior to the prohibited personnel action

with any seniority rights; if reinstatement is unavailable, Plaintiff seeks front pay;

(c) Back pay and lost benefits;

(d) Compensatory damages in an amount to be determined at trial, but not less than

$300,000;

(e) Pre-judgment interest;

(f) Punitive damages in an amount to be determined at trial;

(g) Statutory attorney's fees;

(h) Reasonable costs and expenses associated with this suit;

(i) Such other and reasonable relief as the Court deems just and proper.

**Count II**
**Violation of Americans With Disabilities Act**
**(Disability Discrimination)**

46. Plaintiff incorporates the allegations of paragraphs 1-45 of the Complaint as if fully

stated herein.

47. Plaintiff had a qualifying disorder within the meaning of the ADA, as amended, and

Defendants' managers, including Morgan and Tiffany, had notice of that disability – persistent

back pains that required continuing treatment by a healthcare provider.

48. Plaintiff's medical condition substantially limited several of his major life activities such

as working, walking, bending, lifting, sleeping, and major bodily functions ss defined by the

ADA and the 2008 amendments thereto. Specifically, beginning in or around June 2019

Plaintiff's medical condition caused him to walk at a slower pace with bent back and slouched

-11-

shoulders to brace the pain; he could not bend to pick up objects or carry packages over certain weight limits; he needed assistance in caring for his personal hygiene at times; his sleep was disturbed by frequent interruptions due to pain approximately 3-4 nights per week; he awoke several days in debilitating pain that affected his ability to work and/or concentrate on his job duties; and he could no longer stand for sustained periods of time.

49.  With (or without) reasonable accommodations Plaintiff could perform the essential functions of his position as a nurse.

50. Plaintiff requested reasonable accommodations to allow him to continue to perform the essential functions of his position as a nurse – which included, but were not limited to, intermittent sick leave to attend medical appointments to treat his condition and recuperate from flare-ups of his medical condition.

51.  Defendants' managers and HR personnel, including Morgan and Tiffany, knew about Plaintiff's disability from having communicated with him about his requests for sick leave and/or FMLA leave, observed his changed gait from the pain as well as his slowed movement and overall functioning when he worked in pain.

52.  In addition, Defendants' managers and HR personnel, including Morgan, Tiffany and Katie perceived Plaintiff to be disabled.

53. After Defendants managers and HR personnel, including Morgan, Tiffany and Katie, received notice of Plaintiff's disability and/or developed the perception that he was disabled, they engaged in a calculated effort to end his employment before he became a perceived burden to the nursing pool of workers.

-12-

54.  Defendants intentionally discriminated against Plaintiff in violation of the ADA, including, but not limited to, refused to discuss reasonable accommodations with Plaintiff, denied his requests for sick leave, threatened to remove Plaintiff from the work schedule if he did not report to work in pain, removed Plaintiff from the work schedule on July 17, 2019 even though he was available and medically released to work, and ultimately terminated his employment for fabricated reasons on July 18, 2019 because of his actual and/or perceived disability.

55.  By virtue of Defendants' intentional actions, Plaintiff was terminated or otherwise discriminated against with respect to his compensation, terms, conditions and/or privileges of employment on the basis of his actual and/or perceived disability status in violation of the ADA, as amended.

56.  As a direct and proximate result of said intentional acts, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer emotional distress, humiliation, embarrassment, inconvenience and damage to his reputation.

57.  Defendants' termination of Plaintiff's employment occurred under circumstances giving rise to an inference of unlawful discrimination based on his actual and/or perceived disability.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for equitable relief and damages in an ascertainable sum as follows:

(a) An injunction requiring Defendants to cease their illegal personnel practices;

(b) Reinstatement to the position Plaintiff held prior to the prohibited personnel action

with any seniority rights; if reinstatement is unavailable, Plaintiff seeks front pay;

    (c)  Back pay and lost benefits;

    (d)  Compensatory damages in an amount to be determined at trial, but not less than

       $300,000;

    (e)  Pre-judgment interest;

    (f)  Punitive damages in an amount to be determined at trial;

    (g)  Statutory attorney's fees;

    (h)  Reasonable costs and expenses associated with this suit;

    (i)  Such other and reasonable relief as the Court deems just and proper.

**Count III**
**Violation of Title VII**
**(Gender Discrimination)**

58.  Plaintiff incorporates the allegations of paragraphs 1-57 of the Complaint as if fully stated herein.

59.  Plaintiff is a member of a protected class by virtue of his gender (male).

60.  At all relevant times Plaintiff was satisfactorily meeting his employer's expectation for his position as a nurse.  Indeed, Plaintiff exceeded expectations because he was often called upon to cover shifts that were understaffed and to substitute as supervisor when the regular nursing supervisor was absent.

61.  Defendants never placed Plaintiff on notice that they had any concerns about his attendance, including any alleged tardiness.

62.  Plaintiff never received from Defendants an initial written warning, second written

-14-

warning, or final written warning related to tardiness.

63.  However, on July 18, 2019 Defendants terminated Plaintiff for alleged tardiness dating back to July 24, 2018, almost a year preceding his termination.

64.  Female nurses who had serious tardiness issues, more than the amount alleged against Plaintiff and over a shorter period of time, were not terminated or otherwise disciplined by Defendants.

65.  Defendants violated their own attendance disciplinary policies in terminating Plaintiff's employment.

66.  Defendants fabricated the dates of alleged tardiness to terminate Plaintiff's employment.

67.  Defendants' termination of Plaintiff's employment occurred under circumstances giving rise to an inference of unlawful discrimination based on his gender.

68.  As a direct and proximate result of said intentional acts, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer emotional distress, humiliation, embarrassment, inconvenience and damage to his reputation.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for equitable relief and damages in an ascertainable sum as follows:

(a)  An injunction requiring Defendants to cease their illegal personnel practices;

(b)  Reinstatement to the position Plaintiff held prior to the prohibited personnel action with any seniority rights; if reinstatement is unavailable, Plaintiff seeks front pay;

(c)  Back pay and lost benefits;

(d) Compensatory damages in an amount to be determined at trial, but not less than $300,000;

(e) Pre-judgment interest;

(f) Punitive damages in an amount to be determined at trial;

(g) Statutory attorney's fees;

(h) Reasonable costs and expenses associated with this suit;

(i) Such other and reasonable relief as the Court deems just and proper.

**Count IV**
**Violation of the Family and Medical Leave Act**
**(Interference Claim)**

69.  Plaintiff incorporates the allegations of paragraphs 1-68 of the Complaint as if fully stated herein.

70.  At all relevant times, Plaintiff was afflicted with a FMLA-qualifying condition – persistent back pain for which he was under medical care.

71.  Plaintiff's serious health condition made him unable to perform his job functions on days when he had flare-ups of his back pain that did not subside with medication, such that he needed to be placed on sick leave from work.

72.  On several dates during June 2019 Plaintiff requested sick leave due to his health condition, of which Defendants' managers and HR personnel, including Morgan and Tiffany, were aware.

73.  Yet, Defendants' managers and HR personnel, including Morgan, Tiffany and/or Katie

-16-

denied Plaintiff's requests for sick leave, threatened to remove Plaintiff from the work schedule if he did not report to work in pain rather than permit him to take sick leave, removed Plaintiff from the work schedule on July 17, 2019 even though he was available and medically released for work, and ultimately terminated his employment for fabricated reasons on July 18, 2019.

74.  As a direct and proximate result of said intentional acts, Plaintiff has suffered and continues to suffer loss of employment, loss of income, and loss of other employment benefits.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for equitable relief and damages in an ascertainable sum as follows:

(a)  An injunction requiring Defendants to cease its illegal personnel practices;

(b)  Reinstatement to the position Plaintiff held prior to the prohibited personnel action with any seniority rights; if reinstatement is unavailable, Plaintiff seeks front pay;

(c)  Back pay and lost benefits;

(d)  Liquidated damages under the FMLA;

(e)  Pre-judgment interest;

(f)  Statutory attorney's fees;

(g)  Reasonable costs and expenses associated with this suit;

(h)  Such other and reasonable relief as the Court deems just and proper.

**Count V**
**Violation of the Family and Medical Leave Act**
**(Retaliation)**

75.  Plaintiff incorporates the allegations of paragraphs 1-74 of the Complaint as if fully stated herein.

76.  Plaintiff engaged in protected activity under the FMLA in June and July 2019 when he requested sick leave from Morgan and the scheduler because of his serious health condition, notified HR personnel that Morgan and other managers denied his requests for sick leave and threatened to remove him from the schedule when he requested sick leave, discussed with HR personnel (Tiffany) his need for intermittent sick leave under the FMLA, partially completed FMLA paperwork, and requested that his doctor provide medical certification for his FMLA leave on a form provided by HR personnel.                                                -

77.  Defendants, through Morgan, Tiffany, Katie, and others, intentionally retaliated against Plaintiff by, among other things, denied his requests for sick leave, threatened to remove him from the work schedule if he did not report to work in pain, removed him from the work schedule on July 17, 2019 even though he was available and medically released for work, and ultimately terminated his employment for fabricated reasons on July 18, 2019.

78. There exists a causal connection between Plaintiff's request for medical leave and other FMLA protected activities and the adverse employment actions noted above.  Evidence of this causal connection include the close temporal proximity of Plaintiff's request for medical leave and engaging in other protected activity in June and July 2019, the adverse employment actions taken by Defendant, his termination on July 18, 2019, the fabricated reasons for termination, Defendants' violation of their own policies, and disparity in discipline as compared to other female co-workers.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for equitable relief and damages in an ascertainable sum as follows:

-18-

(a)  An injunction requiring Defendants to cease its illegal personnel practices;

(b)  Reinstatement to the position Plaintiff held prior to the prohibited personnel action with any seniority rights; if reinstatement is unavailable, Plaintiff seeks front pay;

(c)  Back pay and lost benefits;

(d)  Liquidated damages under the FMLA;

(e)  Pre-judgment interest;

(f)  Statutory attorney's fees;

(g)  Reasonable costs and expenses associated with this suit;

(h)  Such other and reasonable relief as the Court deems just and proper.

## Jury Demand

Plaintiff respectfully demands a jury trial in this action.

Respectfully submitted,

/s/  Jeanett P. Henry
Jeanett P. Henry, [Bar No. 22571]
8403 Colesville Road, Suite 1100
Silver Spring, MD 20910
Tel.:  (301) 562-1340
Fax:  (240) 638-2701
Email:  jhenry2085@aol.com

**Attorney for Plaintiff**