IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ABU SAMURA, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Case No.:  1:20-cv-02095-SAG |
| | * |
| SAVASENIORCARE ADMINISTRATIVE | * |
| SERVICES, LLC, ET AL., | * |
| | * |
| Defendants. | * |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS OR STAY THE CASE
AND COMPEL ARBITRATION, AND FOR AN AWARD OF ATTORNEYS' FEES**

Defendants, SavaSeniorCare Administrative Services, LLC ("Administrative Services, LLC") and SSC Catonsville Operating Company, LLC ("SSC Catonsville"), by and through their attorneys, move the Court to dismiss or stay the case and compel Plaintiff, Abu Samura, to submit his claims to arbitration. Defendants also move the Court for an award of attorneys' fees as a sanction for Plaintiff's lack of justification for his refusal to arbitrate. As explained below, Plaintiff agreed to submit any claims concerning Plaintiff's employment or separation from employment to binding arbitration and the obligation to arbitrate was mutually binding, and therefore, his refusal to submit his claims to arbitration has no arguable basis in law. Accordingly, all claims asserted in this action should be compelled into arbitration pursuant to 9 U.S.C. §§ 3 and 4 and the proceeding in this Court dismissed, or in the alternative, stayed pending the resolution of the arbitration, and Defendants should be awarded their attorneys' fees incurred in connection with this Motion.

1

**I.     RELEVANT FACTS**

Plaintiff is a former Registered Nurse at SSC Catonsville, a health and rehabilitation facility located in Catonsville, Maryland.  Complaint ¶ 4.  His lawsuit against SSC Catonsville asserts claims related to his employment with SSC Catonsville (i.e., Count I, alleging failure to accommodate under the Americans with Disabilities Act ("ADA"), and Count IV, alleging interference with the Family and Medical Leave Act ("FMLA")) and Plaintiff's separation from employment (i.e., Count II, alleging discriminatory discharge under the ADA, Count III, alleging gender discrimination under Title VII of the Civil Rights Act of 1964, and Count V, alleging retaliation under the FMLA).  Plaintiff claims that Defendants together committed these wrongs and violated his legal rights.  Complaint ¶ 36.

Plaintiff twice signed agreements obligating him to submit all claims arising from his employment or separation from employment to arbitration.

The first agreement obligating Plaintiff to arbitrate his claims was signed when Plaintiff applied for employment with SSC Catonsville.  At that time, he signed an "Employment Dispute Resolution ('EDR') Program Agreement" which clearly explained that mandatory arbitration of employment claims was a condition of employment.  *See* Exhibit 1, Affidavit of Megan Pollock, ¶ 3 and Exhibit 1 thereto.

At the top of this EDR Program Agreement, in a text box and in bold print, the EDR Program steps were explained: a series of four steps to resolve employment suits culminating in arbitration.  The text box concluded with the following sentence:

> **If you wish to be considered for employment, you must read and sign the following agreement binding you to use the EDR program to resolve all disputes.  An EDR Program booklet describing the program in detail is available where you obtained this Application.**

*Id.*, Exhibit 1 (emphasis in original).  The text below recited that both Plaintiff and SSC Catonsville *mutually agreed* "to resolve all claims, controversies or disputes related to my application for employment, my employment and/or termination of my employment." *Id.*, Exhibit 1, paragraph 1.  The document further confirmed the following understanding and agreement:

> I understand and agree that the last step of the EDR Program is final and binding arbitration by a neutral arbitrator.  I understand and agree that this mutual agreement to use the EDR Program and to arbitrate claims means that the Facility and I are bound to use the EDR Program as the only means of resolving employment related disputes and forego any right either may have to a jury trial.  **I further understand and agree that if I file a lawsuit regarding a dispute arising out of or relating to my application for employment, my employment, or the termination of my employment, the Facility may use this Agreement in support of its request to the court to dismiss the lawsuit and require me to use the EDR Program instead**.

*Id.*, Exhibit 1, paragraph 2 (emphasis added).

Thereafter, at the time of hire, Plaintiff signed an Acknowledgment that he had received the EDR Program Booklet and that he understood that he was "bound to resolve my employment related disputes as described within the booklet."  *Id.*, ¶ 4, Exhibit 2 thereto.  In fact, the Acknowledgment is the last page of the EDR Booklet.  *Id.*, Exhibit 3 thereto.

The EDR Program Booklet of which Plaintiff acknowledged receipt stated:

> Your decision to accept employment or to continue employment with the Company constitutes your agreement to be bound by the EDR Program.  Likewise, the Company agrees to be bound by the EDR Program. This mutual agreement to arbitrate claims means that both you and the Company are bound to use the EDR Program as the only means of resolving employment related disputes and to forego any right either may have to a jury trial on issues covered by the EDR Program.

*Id.*, Exhibit 3 thereto, page 1, paragraph 4.[1]

---

[1] The EDR Program Booklet was prepared by Administrative Services, LLC, the entity which provided various support services, including employment-related support services, to SSC Catonsville.  The EDR Program Booklet is made available for use by various affiliated operating companies, like SSC Catonsville, who employ the individuals working at each facility.  The EDR

3

The EDR Program provided for a graduated four-step process for resolving all employment-related disputes, with arbitration as the final, exclusive step to resolve disputes: "If the parties cannot mutually resolve the dispute in the first three steps, the Company has agreed to submit the dispute to an outside, impartial arbitrator and to accept the decision of the arbitrator as final and binding." *Id.*, Exhibit 3, page 1.

The EDR Booklet also included a "Q&A" section that further emphasized, in easily understood terms, that arbitration of claims was required:

> Q: If I don't want to go through Mediation or Arbitration, can I go to court?
>
> A: No.  By choosing to work at the Company or remaining employed with the Company, you have agreed to not go to court for issues covered by the EDR Program.  Similarly, the Company has agreed to be bound by the EDR Program.  **If you attempt to take a dispute to court, the Company will seek to enforce the EDR Program and remove it from the court system.**

*Id.*, Exhibit 3, page 11 (emphasis added).

Nowhere within the Employment Dispute Resolution Program Agreement or in the EDR Program Booklet did SSC Catonsville reserve to itself the right to change the program or forego the process.  In fact, the EDR Program Booklet stated, "The EDR Program **remains in effect for the length of your employment and continues in effect should your employment end.**"  *Id.*, Exhibit 3, page 3 (emphasis added).

## II.  LEGAL ARGUMENT

As explained below, Plaintiff entered into an agreement to arbitrate that was clear and is binding, and therefore, his refusal to submit his claims to arbitration has no arguable basis in law. Accordingly, the Court should enforce the agreement by dismissing or staying the case, and award

---

Program Booklet states, "All references to the 'Company' in this booklet refer to the subsidiaries that employ the individuals working there."  *See* Exhibit 1, ¶ 5, Exhibit 3 thereto, page 1.

Defendants' their attorneys' fees as a sanction for Plaintiff's lack of justification for his refusal to arbitrate.

### A. PUBLIC POLICY FAVORS ENFORCING ARBITRATION AGREEMENTS

The EDR Program Booklet provides that the "application, interpretation and enforcement of the EDR Program is covered by the Federal Arbitration Act." Exhibit 1, Exhibit 3 thereto, page 3.

Congress enacted the Federal Arbitration Act ("FAA") to reverse decades of judicial hostility toward arbitration agreements and to place these agreements on the same footing as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Under the FAA, arbitration is proper when there is a valid written agreement covering the asserted claims. 9 U.S.C. § 2. This includes employment arbitration agreements, even where some or all of the claims themselves arise under state law. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *accord Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir. 2013).

Guided by the FAA, the U.S. Supreme Court has held that arbitration agreements are to be read liberally to effectuate their purpose (*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25), and are to be "rigorously enforced." *Perry v. Thomas*, 482 U.S. 483, 490 (1987). The Fourth Circuit has observed that a "district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). Indeed, the EDR Program and the Agreement relating

thereto have previously been found to be valid and enforceable by this Court in the case of *Boettcher v. SSC Glen Burnie Operating Company, LLC*, Civil Action No. WMN-15-714, 2016 WL 4395880 (D. Md. Aug. 18, 2016).

On a motion to compel arbitration, a court considers two key issues: (1) whether the parties formed a valid and enforceable agreement to arbitrate, and (2) whether the agreement to arbitrate encompasses the underlying dispute. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); 9 U.S.C. §§ 2, 3. As discussed in further detail below, both of these requirements are satisfied.

### B. THE PARTIES' ARBITRATION AGREEMENT IS VALID AND ENFORCEABLE

When evaluating an arbitration agreement, a court must apply state law principles governing the formation of a contract and the validity of a contract in determining whether an enforceable arbitration agreement exists. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995); *Muriithi*, 712 F.3d at 179; *Adkins*, 303 F.3d at 501. As set forth below, the arbitration agreement at issue here constitutes a valid and enforceable contract under Maryland law.

Consideration is an essential element of any contract. *Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 590 (2006) (In most instances, the determination of a contract's enforceability is decided by the existence of consideration."). In Maryland, mutually binding promises to arbitrate constitute sufficient consideration to uphold an arbitration agreement. *Nowak v. NAHB Research Ctr., Inc.*, 157 Md. App. 24, 34 (2004) ("Once the court finds that a mutual exchange of promises to arbitrate' exists, 'its inquiry ceases, as the agreement to arbitrate has been established as a valid and enforceable contract.'") (citations omitted). By contrast, where an employer reserves the right to modify or revoke an arbitration agreement, such as by publishing its arbitration policy

6

solely in an employee handbook with a contract disclaimer, there is no consideration – even if the employer does not exercise that right – because the promise is illusory. *Cheek v. United Healthcare of the Mid-Atlantic, Inc.*, 378 Md. 139, 147-49 (2003).

In this case, the EDR Program Booklet **unequivocally** binds the parties to the dispute resolution process, which mandates arbitration as the final and exclusive means to resolve disputes. Nowhere in that Booklet does the employer reserve to itself the right to alter, amend, modify or revoke this obligation. Indeed, the mutuality of the obligation is repeatedly referenced. Exhibit 1, Exhibit 3 thereto, page 1, paragraph 2 ("If the parties cannot mutually resolve this dispute . . . the Company has agreed to submit the dispute to an outside, impartial arbitrator and **to accept the decision of the arbitrator as final and binding."**); page 1, paragraph 4 ("Likewise, the Company **agrees to be bound** by the EDR Program. This mutual agreement to arbitrate claims means that both you **and the Company** are bound to use the EDR Program as the **only means of resolving employment related disputes** and to forego any right."); page 3, paragraph 1 ("The EDR Program . . . remains in effect for the **entire length of your employment and continues in effect should your employment end."**).

Accordingly, there is ample consideration for Plaintiff's agreement to arbitrate his employment claims, and the Arbitration Agreement is valid and enforceable.

In addition, Plaintiff twice agreed to arbitration as the sole means of resolving any employment disputes. He did so when he signed the EDR Employment Agreement before he was hired and when he signed the Acknowledgment of receipt of the EDR Program Booklet on his date of hire. Exhibit 1, ¶¶ 3, 4, Exhibits 1 and 2 thereto. Plaintiff's agreement to these terms as evidenced by his signature, created an enforceable contract. *See, e.g., Holloman*, 391 Md. at 595 (holding that the signature on the arbitration agreement signified agreement because "under

Maryland law, a party who signs a contract is presumed to have read and understood its terms and as such will be bound by its execution").

### C. PLAINTIFF'S CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT

The FAA applies an overwhelming presumption of arbitrability. The presumption is particularly relevant when the arbitration provision is broadly worded to include "any" or "all" claims. *See, e.g., Aggarao v. MOL Ship Management Co., Ltd.*, 675 F.3d 355, 367-69 (4th Cir. 2011) ("This 'heavy presumption . . . in favor of arbitrability is particularly applicable [where, as here,] the arbitration clause is broadly worded.'" (citing *Levin v. Alms & Assocs., Inc.*, 634 F.2d 260, 266-67 (4th Cir. 2011)).

The Employment Dispute Resolution Program Agreement signed by Plaintiff stated "both the Facility and I agree to resolve **all claims, controversies or disputes relating to my application for employment, my employment and/or my termination of employment with the Company exclusively through the Employment Dispute Resolution Program."** Exhibit 1, Exhibit 1 thereto (emphasis added). Among the non-exclusive list of claims identified by that document were "claims under federal, state and local statutory, regulatory or common law" and "claims for public policy violations, and claims under the law of contract and the law of torts." *Id.* Likewise, the EDR Program Booklet itself provided that "both you and the Company are bound to use the EDR Program as the only means of resolving **employment related disputes. . ."** Exhibit 1, Exhibit 3 thereto, page 1, paragraph 4 (emphasis added).

Plaintiff's claims plainly are employment-related and are within the scope of the arbitration agreement. Plaintiff alleges claims pertaining to his employment (Counts I and IV) and claims relating to his termination from employment (Counts II, III, and V). Consequently, Plaintiff must be compelled to arbitrate all of those claims.

8

**D.    DEFENDANTS' SHOULD BE AWARDED THEIR ATTORNEYS' FEES AS A SANCTION FOR PLAINTIFF'S LACK OF JUSTIFICATION FOR HIS REFUSAL TO ARBITRATE**

When a party challenges the fundamental issue of arbitrability, the standard for assessing its justification is whether it has "any arguable basis in law." *United Food & Commercial Workers, Local 400 v. Marval Poultry Co.*, 876 F.2d 346, 351 (4th Cir. 1989); *see also Dist. Lodge 4 Int'l Assoc. of Machinists & Aerospace Workers v. DynCorp Int'l LLC*, 651 F. App'x 148, 151 (4th Cir. 2016). Since this challenge goes to the "fundamental question of the arbitrator's power very power to act, [it] must be considered sufficiently 'justified' for this purpose unless there is literally no reasonably arguable legal support for [it]." *Id.* (citing *Western Elec. Co. v. Commc'n Equip. Workers, Inc.*, 409 F. Supp. 161, 178 (D. Md. 1976)).

Here, Plaintiff's challenge to the arbitrability of the agreement lacks any arguable basis in law because the agreement is clear and binding. *See supra* Sections II.A-C. On September 22, 2020, Defendants' counsel sent a letter to Plaintiff's counsel stating that Plaintiff's claims are subject to mandatory arbitration and requested that Plaintiff agree to dismiss his Complaint and go through the EDR Program. *See* Exhibit 2, September 22, 2020 Letter. In the letter, Defendants stated that the agreement had previously been found to be valid and enforceable by this Court in the case of *Boettcher v. SSC Glen Burnie Operating Co.*, Civil Action No. WMN-15-3714, 2016 WL 4395880 (D. Md. Aug. 18, 2016).[2]

In *Boettcher*, the plaintiff argued that the defendants waived the right to compel arbitration by failing to respond to the plaintiff's EDR request. 2016 WL 4395880, at *3. The plaintiff filed the lawsuit approximately one year after making the EDR request. *Id.* at *1-2. The Court stated

---

[2] SSC Glen Burnie Operating Company is another operating company affiliated with Administrative Services, LLC.

9

that "[i]n the context of arbitration agreement, 'waiver of the right to arbitrate cannot be inferred in the absence of a clear expression of intent.'" *Id.* at *3 (quoting *Charles J. Frank, Inc. v. Associated Jewish Charities of Balt., Inc.*, 294 Md. 443, 454 (1982)).  The Court further stated that "[n]either delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration." *Id.* (quoting *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001)).  The Court granted the defendants' motion to compel arbitration, finding that the defendants' "conduct did not rise to the level necessary for the relinquishment of the right to arbitrate[,]" and that the defendants "filed a timely motion to compel, and have not utilized the 'litigation machinery,' in a way that has prejudiced [p]laintiff." *Id.* at *3-4.

On October 1, 2020, Plaintiff's counsel sent an email to Defendants' counsel stating that Plaintiff would not voluntarily dismiss his Complaint and proceed with arbitration, and that Plaintiff intended to challenge the validity and/or enforceability of the agreement on the basis that Defendants' waived the right to compel arbitration by failing to respond to Plaintiff's requests to invoke the EDR Program.  *See* Exhibit 3, October 1, 2020 Email.  Plaintiff's counsel explained that after Plaintiff's termination on July 18, 2019, Plaintiff sent a letter to SSC Catonsville on September 11, 2019 regarding his request to invoke the EDR Program, and on January 24, 2020, Plaintiff's counsel sent a letter to SavaSeniorCare Consulting, LLC stating that Plaintiff did not receive a reply to his letter and that Plaintiff's counsel would conclude that the EDR Program is non-existent if no response was received by February 3, 2020.  *See* Exhibit 4, September 11, 2019 Letter; Exhibit 5, January 24, 2020 Letter.  Plaintiff's counsel noted that "nothing has changed in [the Defendants] lack of responsiveness from the *Boettcher* case."  Exhibit 3.

Plaintiff's reliance on *Boettcher* case is misplaced.  The *Boettcher* Court did not find that a delay in the process resulted in a waiver of the defendants' right to arbitrate.  *See Boettcher*, 2016

WL 4395880, at *3-4.  Here, Defendants' have filed a timely motion to compel and have not utilized the "litigation machinery" in a way that has prejudiced Plaintiff.  Plaintiff has no basis to contend otherwise.  Accordingly, the Court should award Defendants' their attorneys' fees as a sanction for Plaintiff's lack of justification for his refusal to arbitrate.

### III. CONCLUSION

There being no dispute that Plaintiff's claims are squarely within a valid and enforceable arbitration agreement, Defendants respectfully request that the Court grant their motion and either dismiss or stay the case and compel Plaintiff to submit his claims to arbitration.  Defendants further respectfully request that the Court award their attorneys' fees incurred in connection with this Motion because Plaintiff lacks justification for his refusal to arbitrate.

Date: October 13, 2020

Respectfully submitted,

/s/
Teresa D. Teare (Bar No. 28055)
Alexander I. Castelli (Bar No. 20550)
SHAWE ROSENTHAL LLP
One South Street, Suite 1800
Baltimore, MD  21202
Telephone:  (410) 752-1040
Facsimile:  (410) 752-8861
tdt@shawe.com
aic@shawe.com

*Attorneys for Defendants*

#847429_3