**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ABU SAMURA,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | Civil No. 1:20-cv-02095-SAG |
| | * | |
| **SAVASENIORCARE ADMINISTRATIVE** | * | |
| **SERVICES, LLC, et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Currently pending is Defendants' Motion to Dismiss or Stay the Case and Compel Arbitration, and for an Award of Attorneys' Fees ("the Motion"). ECF 8. I have reviewed the motion, the opposition, and the reply. ECF 8-1, 10-1, 11. A telephonic hearing was held on November 20, 2020. For the reasons stated below, Defendants' motion to stay the case and compel arbitration will be granted. However, Defendants' motion for attorneys' fees will be denied, and instead, Defendants are ordered to show cause as to why their seeking of sanctions does not warrant Rule 11(b) sanctions for frivolity.

## I. Factual and Procedural Background

In April 2017, Plaintiff applied for a nursing position with Defendant SSC Catonsville. ECF 9-2 at 5. As part of the application process, he signed an Employment Dispute Resolution Program Agreement (the "EDR Agreement"). *Id.* The EDR Agreement identified a dispute resolution process that constituted the exclusive means for resolving most workplace disputes. Plaintiff signed and initialed the document. *Id.* After he was hired, Plaintiff received the Facility's Employee Dispute Resolution Program Book (the "EDR Program Book"), the receipt of which he

acknowledged via signature.  *Id.* at 7.  The EDR Program Book outlines a four-step process for resolving all employment-related disputes, with arbitration as the final step: "If the parties cannot mutually resolve the dispute in the first three steps, the Company has agreed to submit the dispute to an outside, impartial arbitrator and to accept the decision of the arbitrator as final and binding." *Id.* at 11.  Defendants allege that, together, the EDR Agreement and EDR Program Book constitute a binding agreement to arbitrate (the "Arbitration Agreement").

To begin the arbitration process once the other EDR steps have been satisfied, the company's EDR Administrator must "provide [the employee] with the required arbitration documents."  *Id.* at 18.  The employee must then return  the completed documents, with an initiation fee, to the company.  *Id.*  The EDR Administrator has the "sole discretion," in "some circumstances," to waive Step 3 (mediation) and to advance the employee's dispute directly to arbitration, *id.* at 17, but otherwise employees are generally required to engage in each of the four EDR steps, *id.*  The EDR Program has "detailed," "specific" rules that govern arbitration, but the employee must request a copy of these rules from the EDR Administrator.  *Id.*  The EDR Administrator and other relevant human resources representatives are not identified by name in the EDR Program Booklet, nor are their names available on the company's website.  ECF 10-2.

Plaintiff was terminated from his position on July 18, 2019.  ECF 1 ¶¶ 26-27.  On September 11, 2019, Plaintiff wrote a letter to Defendants seeking to begin Step 1 (Open Door) of the EDR Program.  ECF 9-5.  He received no response despite repeated follow-up.  *Id.*  According to a January 24, 2020 letter sent by Plaintiff's attorney, Plaintiff called Defendants on November 22, 2019 and sought to begin Step 2 (Facilitation) of the EDR Program, but again received no response.  ECF 9-6.  Defendants also ignored the January 24, 2020 letter from Plaintiff's counsel. Plaintiff then filed this lawsuit on July 17, 2020.  The company responded by filing the instant

motion to compel arbitration on October 13, 2020.  In an October 27, 2020 declaration, Plaintiff stated that, up to that point, he had not received the specific rules that govern the EDR Program arbitration process, and had not received the required documents from the EDR Administrator in order to begin the arbitration process.  ECF 10-2.  On November 16, 2020, this Court sent a letter to counsel setting a hearing for November 20, 2020, at which the Court wanted "an update regarding what steps defendants have taken to advance plaintiff's claims through the EDR program."  ECF 12.  At the hearing, the parties confirmed to the Court that Defendants had just sent the relevant arbitration documents to Plaintiff on November 18, 2020, so that he was now in receipt of those documents.

## II.  Standard of Review

"Motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment," and "[w]hether the motion should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings."  *PC Const. Co. v. City of Salisbury*, 871 F.Supp. 2d 475, 477-78 (D. Md. 2012); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 241-42 (4th Cir. 2017) (adopting the district court's use of the summary judgment standard).  Because both parties premise their arguments on documents outside the pleadings, this Court will consider those documents and will apply the summary judgment standard.

Rule 56(a) of the Federal Rules of Civil Procedure states that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Defendants bear the burden of showing that there is no genuine dispute of material facts.  *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011).  If they establish that there is no evidence to support

Plaintiff's claim that the arbitration clause is invalid, the burden then shifts to Plaintiff to proffer specific facts to show a genuine issue exists. *Id.* Plaintiff must provide enough admissible evidence to "carry the burden of proof at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of Plaintiff's position is insufficient; rather, there must be evidence on which a factfinder could reasonably find for Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Casey*, 823 F. Supp. 2d at 349. In applying the summary judgment standard, a court must view the facts and inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

### III.    Analysis

#### A.  Motion to Compel Arbitration

In Maryland, mutually binding arbitration agreements are valid and enforceable contracts. *Nowak v. NAHB Research Ctr., Inc.*, 157 Md. App. 24, 34 (2004) ("Once the court finds that a mutual exchange of promises to arbitrate' exists, 'its inquiry ceases, as the agreement to arbitrate has been established as a valid and enforceable contract.'") (citations omitted). Here, the mutuality of obligation is repeatedly and explicitly referenced in both the EDR Agreement and EDR Program Book. ECF 9-2 at 5 ("I understand and agree that this mutual agreement . . . means that the Facility and I are bound to use the EDR Program as the only means of resolving employment related disputes. . . ."); *id.* at 11 ("If the parties cannot mutually resolve this dispute . . . the Company has agreed to submit the dispute to an outside, impartial arbitrator and to accept the decision of the arbitrator as final and binding."); *id.* ("Likewise, the Company agrees to be bound by the EDR

Program.").  Nowhere do Defendants reserve the right to modify or revoke the obligation.  There is no dispute that Plaintiff agreed to these terms by signing the EDR Agreement before he was hired and by signing the Acknowledgment of receipt of the EDR Program Book on his date of hire.

Plaintiff challenges the validity of the Arbitration Agreement on a number of unsuccessful grounds.  Primarily, he argues that the Agreement was illusory and lacked consideration because: 1) Defendants did not sign the EDR Agreement, 2) the Agreement's obligations are not actually mutual, 3) the EDR process is shrouded in secrecy and gives Defendants discretion to avoid arbitration entirely, and 4) the Agreement is unconscionable.[1]  *See* ECF 10-1 at 6-14.

First, that Defendants did not sign the EDR Agreement does not mean they did not submit themselves to it.  *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) ("[A] party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause.").  Here, Plaintiff's candidacy for the job and his eventual employment were explicitly contingent upon his signing of the Agreement, such that Defendants' considering his candidacy and, ultimately, hiring him constituted sufficient consideration to bind Defendants to the Agreement.

Similarly, Plaintiff's mutuality concerns, namely that "the arbitration documents provide no mechanism for SSC Catonsville to initiate the arbitration process," are belied by the explicitly

---

[1] Plaintiff also asserts that Defendant SavaSeniorCare Administrative Services, individually, lacks standing to compel arbitration because it did not sign the EDR Agreement.  ECF 10-1 at 4-5. However, the Fourth Circuit has clearly stated that "if the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *Bartels by & through Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 678 (4th Cir. 2018) (internal citations omitted).  Plaintiff's Complaint does not distinguish between the two defendant entities and thus the Arbitration Agreement applies to both.

mutual language of the EDR Agreement outlined above.  ECF 9-2 at 5, 11.  That the arbitration documents only detailed the specific mechanics for claims an employee might bring against his employer, and not vice versa, does not obviate the Agreement's specific statement that "the Company [is] bound to use the EDR Program as the only means of resolving employment related disputes."  ECF 9-2 at 11.  What is more, the fact that certain provisions only apply to Plaintiff and not to the Company is not grounds for deeming the Agreement illusory.  "[M]utuality 'does not require an exactly even exchange of identical rights and obligations between the two contracting parties' for an arbitration agreement to be valid."  *Best Effort First Time, LLC v. Southside Oil, LLC*, 2018 WL 1583465, at *7 (D. Md. Mar. 30, 2018) (quoting *Walther v. Sovereign Bank*, 386 Md. 412, 433 (2005)).

Plaintiff's concerns regarding the EDR program's ambiguity and Defendants' discretion in administering the program are more troubling.  To begin the arbitration process, a human resources representative must "request the EDR Administrator to provide [the employee] with the required arbitration documents," which the employee must then return to the company along with a fee.  ECF 9-2 at 18.  This EDR Administrator is not identified anywhere, despite its key role as gatekeeper to arbitration.  ECF 10-2.  Plaintiff also details how his attempts to progress through the steps of the EDR Program, starting all the way back in September of 2019, have been stymied at every turn.  The EDR Agreement specifies that employees generally must progress through its four-step process in order before reaching Step 4 (Arbitration).  *See* ECF 9-2 at 11, 17 (stating that employees can only proceed directly to arbitration at "the sole discretion of the EDR Administrator").  Yet Plaintiff was unable to engage in Steps 1 (Open Door) or 2 (Facilitation) because company administrators and the HR Department never responded to his numerous outreach attempts.  *See* ECF 9-5; ECF 9-6.

6

Despite the seriousness of the above considerations as potential evidence of an illusory promise that had allowed Defendants to "sit on" Plaintiff's claims and avoid them entirely, both parties confirmed at the November 20 hearing that Plaintiff was at last in receipt of the relevant EDR documents, and that the current EDR Administrator had been identified. Per the Arbitration Agreement, next steps in the arbitration process can now proceed. With these shortcomings remedied—and assuming Defendants continue to actually move the EDR process forward—the Court concludes that the Agreement is not illusory or unconscionable for its one-sidedness.[2] Plaintiff concedes that if the Arbitration Agreement is valid, as the Court concludes it is, that its scope encompasses his claims. ECF 10-1 at 14. Plaintiff has not established a genuine question of material fact as to the Arbitration Agreement's validity, and therefore Defendants' Motion to Compel Arbitration will be granted. The case will be stayed, though administratively closed, pending the arbitration, to ensure Defendants' continued follow-through.

### B. Motion for Attorneys' Fees

Defendants move for attorneys' fees in connection with this Motion, alleging that Plaintiff's challenge to the validity of the EDR Agreement is frivolous and contrary to longstanding Fourth Circuit law. ECF 11 at 6-7. Although it is true that the general presumption of validity of arbitration agreements is well-established, the specific facts of this case demonstrate, instead, that Defendants' own motion for attorneys' fees toes the line of frivolity. As outlined at

---

[2] Plaintiff also raises unconscionability concerns pertaining to the fact that he was required to sign the EDR Agreement "[i]f he wish[ed] to be considered for employment," but he does not allege that he did not have the opportunity to review the Agreement or that he did not understand what he was signing, nor did he apparently attempt to negotiate the Agreement in the first place. That Defendants conditioned consideration of his job application on signing the form, without more, is not adhesion. *See, e.g.*, *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) (upholding the enforceability of an arbitration agreement that included language conditioning employment on agreeing to arbitration).

length above, Plaintiff spent more than a year attempting to engage Defendants in their own EDR process, only to be stonewalled at every step.  Plaintiff's attempt to circumvent the arbitration process via this litigation was not his first recourse, but rather the culmination of extensive efforts to have his grievance heard—efforts that had, up to this point, been futile.  ECF 9-4, 9-5, 9-6.

Defendants sought attorneys' fees "as a sanction for Plaintiff's lack of justification for his refusal to arbitrate," ECF 9-1 at 11, while simultaneously failing to provide Plaintiff with the "required arbitration documents" or otherwise to respond to Plaintiff's numerous attempts to engage in the EDR Program over the course of the past year.  Even the filing of the lawsuit did not trigger Defendants to respond by engaging in the EDR process with Plaintiff.  Indeed, it was only after the Court scheduled a hearing explicitly to learn "what steps defendants have taken to advance plaintiff's claims through the EDR program," ECF 12, that Defendants provided Plaintiff with copies of the documentation he needed to invoke mediation or arbitration.[3]  To seek sanctions for refusing to arbitrate—after Plaintiff attempted for more than a year to engage in the EDR process to no avail—while simultaneously failing to provide Plaintiff with the necessary EDR paperwork until *after* filing the motion for sanctions and receiving a request from the presiding judge, appears on its face to be the very definition of frivolous.

For these reasons, Defendants' motion for attorneys' fees will be denied.  While Plaintiff made an opposing request for attorneys' fees in his opposition, he did not file a motion to that effect.  As such, the Court acts *sua sponte* in considering whether sanctions should be imposed

---

[3] This situation is especially egregious because at least one other court has warned Defendants that "[t]he failure to respond to Plaintiff's letter and belated invocation of the EDRP reflects poorly on SSC Glen Burnie and Sava Consulting, LLC. That type of behavior is highly discouraged by this Court." *Boettcher v. SSC Glen Burnie Operating Co.*, LLC, No. CV WMN-15-3714, 2016 WL 4395880, at *4 (D. Md. Aug. 18, 2016).  This foot dragging to the point of inspiring litigation is, evidently, not new behavior by the Defendants.

against Defendants for their conduct.  Defendants will be ordered to show cause, under Federal

Rule of Civil Procedure 11(c)(3), as to why their pursuit of sanctions for Plaintiff's alleged "refusal

to arbitrate" is not, itself, frivolous and worthy of sanctions.

### IV.    Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss or Stay the Case and

Compel Arbitration, and for an Award of Attorneys' Fees, ECF 8, is GRANTED as to the Motion

to Stay.  The case will be stayed, but administratively closed, pending resolution of the arbitration.

The Motion is DENIED as to request for attorneys' fees, but the Court will order Defendants to

show cause as to why their pursuit of sanctions did not violate Rule 11(b).  An implementing Order

follows.


Dated:    November 25, 2020                        _____/s/_____

                                                  Stephanie A. Gallagher
                                                  United States District Judge

9